Argued May 27; affirmed June 24, 1941

# METCALF v. METCALF

(114 P. (2d) 547)

Before Kelly, Chief Justice, and Rand, Bailey, Lusk, Rossman and Brand, Associate Justices.

*Fred E. Smith*, of Eugene, for appellant.

*Lawrence T. Harris*, of Eugene (Harris & Bryson, of Eugene, on the brief), for respondent.

ROSSMAN, J. This is an appeal from a decree of the circuit court which granted to the plaintiff a divorce, the custody of four of the five children born of the union, and ordered the defendant to pay for

the nurture of the four children $25 per month. The decree was based upon findings of cruel and inhuman treatment.

At the time of their marriage in 1929 the plaintiff was 18 years of age and in good health. The defendant, who was 36 years of age, was a widower and the father of two children. The marriage occurred in Montana where the defendant was serving as the minister of a church in a very small community. His salary was small. At the end of two years the defendant had apparently failed in his ministerial profession. No church was assigned to him. He then consumed several months unprofitably in the sale of religious tracts, after which he became employed at manual labor. At the time of the trial he was a logger. It appears that he was out of employment frequently and at times worked for men who failed to pay him his wages.

The plaintiff, besides discharging her domestic and maternal duties, which included the care of the two children born of the defendant's first marriage, helped to supplement the small earnings of the defendant. She took in washing, worked in the fields hoeing sugar beets and performed other similar work. The family was desperately poor. Relatives, friends and neighbors contributed food and cast-off clothing. Letters which are before us as exhibits speak of ''debts, debts, debts'' and of the constant struggle to get enough to eat. They describe the plaintiff as poorly clad. The family moved from town to town, literally from shack to shack. At one time the family home was a tourist cabin of one room 9 by 12 feet in size. In it the father, mother and seven children lived—or rather existed. Finally, the county rescued the family from its plight and paid the rent upon some

other quarters. The second of the plaintiff's five children was born without medical assistance. If it were not for the fact that the record shows that the defendant was callous to the needs and condition of his wife and children, one could say that this dismal record merely reflects "the short and simple annals of the poor."

In July of 1939 the family was living in Hamilton, Montana. By that time the plaintiff's good health was gone and she was ill. The defendant was deep in debt—that is, deep in debt considering his meager earning capacity. In reading of the foregoing circumstances we were astonished to observe that one item of his indebtedness was for payments upon the purchase price of an automobile. In the month just mentioned the plaintiff's parents, who were elderly and in poor financial circumstances, were residing near Junction City. It was agreed that the plaintiff should take the children and go to her parents. The defendant promised to keep on working in Montana, send the plaintiff $10 bimonthly and join his family in Oregon as soon as he had discharged his local debts. At that time the youngest of the five children was five weeks old. The defendant borrowed some money and gave the plaintiff $45. The railroad fare was $31 and that left the plaintiff $14 to take care of the expenses en route for herself and the six children. The defendant did not come to Oregon until November 10, when he arrived virtually penniless. In the interval of four months he had sent his family a total of $17. He admitted that the plaintiff had written repeatedly for money. The plaintiff and her children, the oldest of whom was 10 years of age, worked in the orchards, the berry and bean fields, milked cows and did other

farm work. From November 10, 1939, to January 1, 1940, he spent upon his family only $25.

Plaintiff and defendant lived together only once after the defendant's arrival in Oregon. That was apparently due to the defendant's wish that the family be reunited and to the plaintiff's willingness to give the defendant another trial. However the only place which he provided for the reunited family was a small house which had to be shared in common with another family of five. Although the defendant says that he knew his wife was sick at that time and that her health had been poor for a year and a half, that was the only place which he provided for the reunion. The plaintiff, defendant and their children slept in the same bedroom. The kitchen and dining room were used by both families. The effort was discontinued at the end of three days. The plaintiff swore, ''I left because I was just too sick to stay any longer.'' Apart from that single experiment plaintiff and defendant did not live together after they left Montana. The plaintiff swore that her health was so impaired that she preferred to be alone. Her ill health was described by a reputable physician as of a serious nature.

■ In September of 1939, while the defendant was still in Montana, the fall school term was drawing near and the plaintiff, through the defendant's failure to send any money except $12, was confronted with the problem of sending her children to school. About that time she advertised for employment and secured it with a widower who had two boys. She became the housekeeper. The evidence indicates that she demanded references, made investigations, and accepted the employment only because no other opportunity for keeping her children with her while she worked

was available. Based upon her employment, the defendant charged the plaintiff with adultery. The evidence in support of the charge is referred to in the brief of defendant's counsel as "not thoroughly convincing." We agree. It is not convincing at all. We now quote from the opinion which the trial judge announced orally at the close of the evidence:

"She has lived, I think, in comparative poverty. During these years she was living with him in Montana and bearing these children, for a woman to give birth to five children under the conditions that this woman was living, I don't see how in the world she could stand it. It is a wonder to me that her health is not completely gone under the circumstances. I think on account of the sexual demands her husband evidently made that she came to the point where she couldn't endure him. I am satisfied that's the case. \* \* \* Now, there is something about this plaintiff in this case that rather impresses me. I am sure I don't know what advantages she may have had as to education or anything of that sort, but there is a sort of quiet dignity about the plaintiff and her manner of testifying, even her language and manner of expression are good and impressive and I think she is telling the truth in this case. I don't think she has had any adulterous relations \* \* \* . I don't see any good purpose in keeping these people together. She doesn't want to live with him. He professes to love his wife, even though he says she committed adultery. \* \* \* I think the very best thing is for these two people to terminate this marriage and I will make a decree granting her the divorce and the custody of the four children, leaving the older boy with the father. \* \* \*"

■ We concur in those views. Nonsupport and poverty are not grounds for divorce in this state; but the record shows something more than nonsupport. A man of small earning power need not be heedless of his family's well-being and of his wife's health. This

defendant at times left home for work at a distant point without making any provision for his family during his absence and without communicating with them during the month or more he was away. Shortly before the birth of one of his children he was perturbed when he discovered that his wife, preparatory to the ordeal, had quit the taking in of washing. When he was asked why he did not provide his wife with medical assistance at the time of the birth of the second child, he replied that the weather was cold, that the nearest physician was many miles distant and that his wife was not insistent. The same callous indifference to his wife's health rendered it possible for him to make demands upon her for his sexual gratification, the indulgence of which finally impaired her health seriously. And he charged her in his answer with adultery although he lacked substantial proof. We believe that the above facts show that the defendant was guilty of cruel and inhuman treatment of the plaintiff which rendered her life burdensome within the contemplation of § 9-907, subd. 6, O. C. L. A.

We have considered all other contentions of the defendant. In our opinion, they possess no merit.

The decree of the circuit court is affirmed.